### Crane Company v. William Hogan.

#### Gen. No. 12.951.

1. ASSUMED RISK—*what not within doctrine of.* A servant engaged in the regular course of his employment in loading a car does not assume the risk that the master will back a train against such car at a high rate of speed.

2. INSTRUCTIONS—*when refusal of court to consider more than arbitrary number, not error.* It is not reversible error for the court to refuse to consider more than a specified number of instructions if it appears that the instructions actually given fully and fairly presented to the jury the law applicable to the case.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in this court at the March term, 1906. Affirmed. Opinion filed February 7, 1907.

Crane Co. v. Hogan.

Statement by the Court. This is an appeal from a judgment of the Superior Court against appellant and in favor of appellee for $3,500. The judgment was rendered in an action for personal injury to the appellee (plaintiff below), alleged to have resulted from the negligence of the appellant (defendant below). The cause was tried before a jury, which found a verdict against the defendant for $5,000. The trial judge, on a motion by the defendant for a new trial, held that this verdict was excessive and announced that he would grant a new trial unless the plaintiff remitted $1,500. The plaintiff thereupon remitted $1,500, and the court denied the motion for a new trial and a subsequent motion in arrest of judgment and entered judgment for $3,500.

The assignments of error in this court allege that the court erred in not holding the verdict so excessive as to require a new trial, and that the amount of $3,500 is excessive for the injuries proven; also that the court erred in not taking the case from the jury on the motion of the defendant at the close of the plaintiff's evidence and at the close of all the evidence; that it erred in admitting incompetent and in excluding competent evidence, in giving instructions which were improper and refusing to give tendered instructions which were proper, and in not granting a new trial on the ground the verdict was against the law and the evidence.

The appellant also complains that certain instructions tendered by it were not received, examined or marked, but arbitrarily refused by the court without examination as exceeding the number which the court had fixed as allowable, and that this action on the part of the trial judge was erroneous and prejudicial to the defendant. The bill of exceptions shows the facts about these instructions to be as follows:

At the close of the evidence on September 27, 1905, counsel for defendant tendered to the court forty instructions to be marked given. The court handed back

all these instructions to counsel, saying that counsel might tender for the consideration of the court twenty instructions and no more, and that the court would pass on twenty instructions and no more. To this ruling of the court the defendant then and there excepted, the plaintiff's counsel stating that it offered no objection to the court passing upon the instructions tendered by the defendant. Subsequently defendant took an exception to the action and decision of the court in refusing to receive, examine and give to the jury each and every one of said forty instructions.

After the opening argument to the jury for the plaintiff was concluded, the defendant handed again to the judge twenty of the said instructions, and subsequently, by permission of the court, two additional instructions. The court marked sixteen of these given, and read the same to the jury before they retired. He refused to give and marked "refused" six. Thereupon, without further tendering to the court, or filing with the clerk, or having marked for identification the other eighteen instructions first offered to the court and by him returned without examination, counsel for defendant took away the said eighteen instructions and kept the same for eleven days. On October 7, 1905, they filed with the clerk said eighteen tendered instructions, and had the same then marked as filed. On settling the bill of exceptions a question arose as to the propriety of the court certifying that these instructions were those handed to the court during the trial of the cause and prior to the argument of counsel to the jury. January 20, 1906, the counsel for the defendant filed certain affidavits with the trial judge asserting the identity of the instructions filed October 7 with those tendered September 27, and thereafter moved the court to certify that the instructions so filed as copied in a bill of exceptions tendered were the same instructions which were tendered to the court upon the trial of said cause, and by the court returned to counsel. This motion the judge denied on

the ground only that he had no personal or judicial knowledge of the matter, because he did not prior to returning said instructions examine the same or any of them. To this ruling of the court the defendant excepted. Defendant's counsel then moved the court to make a finding as a matter of fact from the affidavits which they had filed and which are incorporated into the bill of exceptions, that the instructions so filed on October 7 were the same instructions as those tendered to the court on September 27. After learning from the plaintiff's counsel that they did not desire to offer any counter affidavits, the court allowed the motion and incorporated into the bill of exceptions the finding:

"Upon consideration of the affidavits so filed the court doth find, solely and only from the evidence in said affidavits contained (and does not certify from any judicial knowledge of the court or from any personal knowledge of the judge thereof) that said instructions set out on pages 124 to 131 inclusive hereof" (of the bill of exceptions) "are the same as were tendered to the court by defendant's attorney upon the 27th day of September, A. D. 1905, during the progress of the trial thereof, and prior to the argument of counsel."

To this action and finding of the court the plaintiff saved an exception and then moved to vacate and set aside the finding and strike the affidavits from the file. This motion being denied, he again excepted. The court then allowed a bill of exceptions incorporating the said instructions, prefacing it with this recital: "The court accordingly certifies (solely upon the evidence of said affidavits aforesaid) that the instructions tendered to the court, and which the court declined to examine and pass upon were as follows:"

In this court a motion was made by the appellee to strike from the record the instructions set forth on pages 124 to 131 of the bill of exceptions. This motion was reserved to the hearing.

The plaintiff's theory of the case is set forth in his declaration filed June 19, 1903. It alleges that on February 26, 1903, the plaintiff was in the employ of the defendant company, and it then in the ordinary course of his employment became the duty of the plaintiff to assist in the removal of a plate of iron from a car under the control of the defendant; that the defendant knew that the plaintiff was at work in said car, and ought to have exercised reasonable care for the safety of the plaintiff, but that in neglect of its duty it negligently without warning of any kind to the plaintiff, ran a locomotive or switch engine against said car, causing it to move suddenly and violently, so that the plaintiff, who was in the exercise of due and reasonable care for his own safety, was thrown with great force and violence against the side of the car and injured, and the iron plate was thrown against the plaintiff and one of his fingers torn off thereby, and he otherwise injured. To this declaration the defendant pleaded the general issue.

WING & WING, for appellant.

COBURN & CASE and McGOORTY, POLLOCK & LOEB, for appellee.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

It is earnestly insisted by the defendant company that the verdict and judgment in this case were against the weight of the evidence and against the law applicable to the facts. We do not concur in this view. Apart from the consideration of technical errors alleged, it seems to us that substantial justice has been done. The following facts, as we read the record, were probably established to the satisfaction of the jury:

The plaintiff was, during the night between the 25th and 26th of February, 1903, at work as a common

laborer in a manufacturing plant of the defendant company. He had been in the employment of the defendant a year, and had worked during that time, until the last eleven days, in a day shift. But on the night in question he was among the night workers. About half-past one in the morning the foreman, one Hayes, told several of the workmen, who were piling pig iron in the basement of one of the buildings, to go to a platform at the end of the building and load a box car there with iron borings. The plaintiff was among these men, and he with four others—Malone, Ryan, and two Poles named Araskiewicz and Dergiowicz—went to work on this job as directed. They first had to sweep and shovel out the car. After a time, because of the state of the floor of the car, which was rough and broken, Hayes told the men to get an iron plate or board to place on the floor, so that they could, in loading the car, more easily shovel the borings into proper place as they came down through the chute. Malone and the plaintiff got an iron plate or board weighing 150 pounds, or thereabouts, and placed it on the floor of the car. Then they and the others placed the chute in position to pour the borings into the car, and as the borings came into the car shoveled them to proper place. Hayes, the foreman, was superintending the job, and during the loading came into the car and chalked a load line along the side of the car. After the car was loaded to that line one of the men looked after closing the spout hole in the car, and the plaintiff and two others took out the chute, carried it into the scale room or onto the platform ten or twelve yards away, and then came back to the car. After helping Ryan to dispose of a drip-pan that had been used in connection with the handling of the oily borings, the plaintiff, in connection with Araskiewicz, went into the car to take out the iron plate or board. Malone removed the lighted lantern and held it in his hand, standing on the platform four or five feet from the door. Araskiewicz took the side of the plate nearest

the door and backed out the door and onto the plat-
form holding it. The plaintiff was holding the other
side of the plate, and as he was going toward the car
door with it, just when his hands were in line with the
jamb, the car was struck by a switch train which
backed onto it to make a coupling, and which came at a
very lively rate. A heavy lurch of the car was the re-
sult. The plaintiff's hand was caught between the
heavy iron plate and the door and his little finger was
cut off and the next finger severely bruised. The little
finger required amputation thereafter at the palm of
the hand, and the hand since the accident to the time
of the trial—when the jury saw it—was (according to
the construction of the evidence we think most reasona-
ble) stiff and painful, and could not be completely
closed.

There was a practice in the place when the cars were
loaded to take out all tools that had been used in the
loading before the cars were placed on the scales for
weighing, and in this particular case the foreman,
Hayes, gave a special order to the plaintiff and Aras-
kiewicz to take the iron board or plate out.

Generally when a coupling was to be made by a
switching engine or train with a car that had been
loading, the switchman in charge went and looked in
the car to see that there was nobody there in danger.

On the night in question the switchman, William
Roach, hanging on a ladder on a side of a car on a
moving switch train on a switch track, had passed the
car in which the accident occurred a few minutes be-
fore the accident, and noticed that the chute and the
lantern were out of the car. Hayes, the foreman, was
on the platform. Roach got off the switch south of the
car. The foreman, Hayes, called out, "All right,
Bill;" Roach then gave two loud whistles to the en-
gineer, who ran in with his switching train to make the
coupling, and the accident resulted.

As we have said, we think that the jury probably
considered the facts to be as thus detailed, notwith-

Crane Co. v. Hogan.

standing the denial by Hayes that he made the ex-clamation "All right, Bill," or gave any order to make the coupling, and the further denial that he gave any particular orders to the plaintiff or his companions about taking out the iron board.

Hayes admits that if anybody was to give orders about the coupling and the movements of the switching engine, it was he; that he was just about to give such a signal to Roach, because the loading of the car was finished, but didn't get time to do so. Roach, still in the employ of the defendant, says that from the sound of the voice (a good method of identification on a dark night) to the best of his judgment it was Hayes gave him the order; and one Carlin testified that Hayes, about three months before the trial, had told him that he gave the signal to Roach and Roach gave the signal to the engineer on the night of the accident. To the particular order to the plaintiff to take out the iron board, the plaintiff and Araskiewicz testified. (The word "bar" on page 61 of the record is plainly a clerical error for "board.")

We think the jury believed and that they were justified in believing the plaintiff.

The contention of the defendant on the merits is that after the defendant and his foreman and servants could properly have assumed that the work on the car was over, the plaintiff voluntarily and without suggestion from anybody went into the car to help a fellow workman take out the plate; that this was carelessness on his part and an assumption of risk, and that if the accident was the result of carelessness on the part of Roach in signaling the switch engine back too soon and without orders, or on the part of Malone in taking the lantern from the car, thus causing Roach to believe the car empty, it was the result of the negligence of a fellow-servant for which plaintiff cannot recover.

Aside from what we have said as to the weight

of the evidence and the consideration that the jury were justified in believing the plaintiff's version of the story rather than the defendant's where they conflict, there are other difficulties in the way of accepting defendant's theory.

We think the evidence preponderates in favor of the propositions that there was no material cessation or interruption of work on this car from the time the loading began until the accident occurred; that practically the taking out of this iron board was a part of a continuous job; that Malone's taking the lantern out of the car was no negligence, and that Roach was not a fellow-servant of the plaintiff under the law of Illinois. Unless, therefore, it can be properly said that when men are in the regular course of their employment loading a car, it is a risk incident to their employment that the master will back a train against it at a high rate of speed, the merits of the cause are with the plaintiff. That it cannot properly be so said, we think is clear.

It is argued by defendant that there is a variance between the proof and the declaration, in that a witness was permitted to testify as to the particular order to take out the plate from the car, although no allegation of an order to go into a dangerous place was contained in the declaration. This argument is based on a misconception. The negligence charged and proven was the backing down of the engine at the wrong time; the evidence of the particular order to carry out the plate was competent to show the knowledge of the defendant, through its foreman, of the position of the plaintiff when the engine thus caused the accident, and to negative the claimed contributory negligence of the plaintiff. There was no error in admitting it, and it did not make a variance.

It is very vigorously insisted by appellant that fatal error was committed by the trial judge in this cause, because he arbitrarily refused to consider or pass upon more than twenty instructions tendered by the

defendant, although forty were originally offered. The most material inquiry in connection with this objection, as we think, is whether the jury were fully and fairly instructed on the law. of the case by the instructions that were given, and whether, assuming that such of the instructions that were not passed on and as were not erroneous or misleading in themselves, had been given, they could reasonably have been expected to affect the verdict of the jury. We have carefully examined and compared all the instructions which were given and refused, and all those which appear in the bill of exceptions and are alleged to be those that were tendered by the defendant's counsel but not considered, and we are of the opinion that on all the essential questions in this cause the jury were fairly and fully instructed, and that so far as the unconsidered instructions are concerned, they were either misleading or erroneous, covered by those that were given, or abstract and immaterial as applied to the facts of this case, and quite without the possibility, had they been given, of changing the verdict of the jury.

Instruction numbered 26 is erroneous on two grounds. C. & A. R. R. Co. v. Kelly, 210 Ill. 449-451; McDonnell v. The Chicago City Ry., ante, p. 227.

We deem it, therefore, unnecessary to decide the question raised and pressed by the appellee, whether or not these unconsidered instructions found on pages 124 to 131 of the bill of exceptions, can properly be assumed by us to be the instructions which were tendered to the court on September 27, 1905. A full recital of what appears in the record concerning them is made in the statement prefixed to this opinion. We do not pass on the question involved by it, because, assuming that the instructions appearing in the bill of exceptions are so authenticated and certified that we can take them as. those offered, we nevertheless see no reversible error in the record. For the same reason we deny the motion to strike them from the bill of exceptions. But

we must not be understood as holding that the certificate of the trial judge as it appears in the record is sufficient so to identify them. The opinions of the Appellate Court in this and in the Fourth District in the cases of Haymarket Theatre Co. v. Rosenberg, 77 Ill. App. 183, and Wells v. Tedrick, 69 Ill. App. 203, would seem to tend towards the contrary view.

It was technically erroneous for the trial judge to limit the number of instructions—Chicago City Ry. Co. v. Sandusky, 198 Ill. 400—but it would seem that defendant could easily have compressed the instructions which he thought necessary in this cause into twenty—and we think he did. The error was not a fatal one under the circumstances.

We do not think we should disturb the judgment on account of the size of the verdict. It was large, but not so large as to show passion or prejudice, and the judgment, after the *remittitur,* is not, in our opinion, reversible as excessive. It is affirmed.

*Affirmed.*